DAUKSCH, Judge,
dissenting with
opinion.
I respectfully dissent.
In my opinion this case is controlled by the supreme court rulings in Ralph v. City of Daytona Beach, 471 So.2d 1 (Fla.1983) and Butler v. Sarasota County, 501 So.2d 579 (Fla.1986).
This is an appeal from a summary judgment. Appellant’s daughter was a guest at appellee’s beachfront hotel. She and other members of the University of Florida swimming and diving team were in Dayto-na Beach to compete and were residing at the hotel for the duration of the competition. On the evening of their first day they went onto the beach for a walk. When returning to the hotel, before reaching the hotel’s beach property, she was struck by a drunken driver and rendered profoundly brain-damaged and quadriplegic.
In her lawsuit it was alleged, inter alia:
42. At all times material hereto, Plaintiff’s Incompetent, Julie Baker, was an invitee staying at the HOLIDAY INN OCEANSIDE aforementioned, as a guest, along with other members of the University of Florida Swimming and Diving Team, who were in Daytona for a swimming and diving exhibition.
43. At the aforementioned time and place, there existed a certain condition adjoining the Defendant, HOLIDAY INN OCEANSIDE’S premises, which, by its very nature, presented a foreseeable and unreasonable risk of injury to its business invitees and other members of the public who were using the beach as a lawful means of ingress and egress to its premises, to wit: the highly-dangerous combination of vehicular traffic and pedestrian traffic on the beach adjacent to the Defendant hotel and, in particular, during the night time hours. The condition was made especially dangerous by the absence of lighting and absence of signs warning pedestrians of the highly dangerous situation the vehicular traffic posed to its business invitees and other members of the public who chose to use the beach as a means of ingress and egress to its premises.
44. The Defendant, HOLIDAY INN OCEANSIDE’S premises were business premises, and the Plaintiff’s Incompetent, Julie Baker, at all times material to the Complaint, was invited thereon by the Defendant hotel for the benefit of the Defendant hotel. In addition, the Defendant, HOLIDAY INN OCEANSIDE, expressly or impliedly invited and encouraged its guests to use the beach adjoining the hotel as a means of ingress and egress to the hotel, and, in fact, the beach adjoining the hotel was customarily used by its guests with the knowledge of the Defendant, HOLIDAY INN OCEANSIDE, for such purpose.
45. The Defendant, HOLIDAY INN OCEANSIDE, at all times material to this Complaint, knew, or in the exercise of reasonable care, should have known of the existence of the aforementioned condition upon its premises.
A. Prior to the accident forming the subject of this lawsuit, the Daytona Beach Area Chamber of Commerce appointed a Blue Ribbon Committee to conduct an extensive review of the various problems associated with the beach area and to suggest solutions. The committee undertook a year-long study. One problem noted by the Blue Ribbon Committee in its final report, which preceded the accident in this case, was that statistics substantiate a real safety danger for pedestrians on the beach at night due to vehicular traffic, and that pedestrian use of the beach is incompatible with vehicular traffic without careful management. The final report also recommended over-walks and other types of ingress and egress to the beach from motels. The committee noted in its report that the principal problem was ‘apathy and lack of understanding.’ One of the members of the Blue Ribbon Committee which studied this problem was Charles LaC-our, who happens to also be the President of the Defendant, CONSOLIDATED INNS OF DAYTONA BEACH, INC., d/b/a HOLIDAY INN OCEANSIDE, as well as being the President of the Dayto-na Beach Hotel-Motel Association. Notwithstanding the actual knowledge of its *986 own corporate President of the danger on the beach behind the Holiday Inn, no warning signs were posted nor any lighting system erected by Holiday Inn to protect is clientele.
46. The Plaintiff's Incompetent, Julie Baker, at all times material to the Complaint, was unaware of the existence of the dangerous and defective condition upon the Defendant hotel’s premises.
A. At all times material hereto, Plaintiff’s Incompetent had no knowledge that vehicular traffic was permitted to drive upon the unlit beach at night time without any supervision while pedestrians were also invited to walk along the same dark beach at the same time. HOLIDAY INN OCEANSIDE had superior knowledge of the hazard, but failed to warn Plaintiff’s Incompetent.
47. The Defendant, HOLIDAY INN OCEANSIDE, owed to all business invitees, such as Plaintiff’s Incompetent, Julie Baker, an absolute and non-delegable duty to take reasonable steps to warn of the danger of injury to its invitees posed by the motor vehicular traffic on Dayto-na Beach and, in particular, the beach area immediately north of the Silver Beach Entrance where it, in fact, knew that said motor vehicular traffic posed a high risk of injury to its invitees.
48. At all times material hereto, the Defendant, HOLIDAY INN OCEANSIDE, was under a duty to exercise reasonable care to avoid injury to its invitees who were using the beach which adjoins the Defendant hotel where the Defendant hotel knew, or in the exercise of reasonable care, should have known that the motor vehicular traffic posed a high risk of injury to its invitees.
49. The Defendant, HOLIDAY INN OCEANSIDE, at all times material to the Complaint, owed a duty to its business invitees to discover the aforementioned dangerous conditions and to make safe the dangerous condition adjoining its premises by illuminating the beach area immediately adjacent to its own property; and/or to provide adequate warnings of such conditions.
As evidence in the record appellant established that the hotel’s property extended over one hundred feet from its seawall toward the ocean, that the owner of the hotel was a member of a “Blue Ribbon Committee of the Chamber of Commerce” to study the “high incidence of night time vehicular/pedestrian accidents” on the beach, and that a study indicated there were forty-two such accidents between January and July of 1979. Seventy-seven percent of the accidents in 1980 took place in the area of this hotel and nearly half occurred at night. It was established that this owner was appointed to this study group before the accident and it is evident his knowledge of the dangerous condition existing on and adjacent to his beach property was extensive and superior to that of the injured girl.
In my opinion the complaint and the evidence presented by the appellant were sufficient to defeat the appellee's motion for summary judgment. There was a duty to warn and appellee may have breached that duty, in my opinion. The court erred in determining as a matter of law that there was no duty to warn or in determining as a matter of fact that there was no breach. Butler says that a landowner can be responsible for the accidental drowning of a person who leaves the owner’s property and ventures into a dangerous area. Ralph says there is a duty to warn of the danger of unsupervised automobile traffic. Taken together I cannot see how this summary judgment is proper — it’s a jury case.